## EWAN v. TREDEGAR CO.[1]

(District Court, E. D. Virginia. April 20, 1882.)

DEMURRAGE—DELAY IN DISCHARGING.

If the ship is prevented, after getting into her dock, from securing a fit place for discharging by any cause over which she has no control, then

[1] This case has been heretofore reported in 5 Hughes, 401, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter or the Federal Cases.

any delay occasioned by the crowded condition of the dock is chargeable to the consignee. But, when a place for unloading is furnished by the consignee within the 24 hours allowed after receiving notice of arrival, delay occurring, not by any insufficiency of carts to receive the cargo, but by reason of the vessel delivering from but one hatch, when she might have used two, is chargeable to her, and she can recover no demurrage therefor.

This was a libel by J. B. Ewan, master of the schooner Sarah Schubert, against the Tredegar Company, to recover demurrage for delay in discharging a cargo of coal at Richmond, Va.

Wyndham R. Meredith, for libelant.

Charles S. Stringfellow, for respondent.

HUGHES, District Judge. It appears from the evidence in this case that the schooner arrived at Richmond on the night of the 15th of November, 1881, and went across to the Richmond & Danville Railroad wharves. Her engagement was to notify the consignee of her arrival, but there is no proof that the notice was received by the respondent until the forenoon of the 17th. The allegation in the libel that notice of arrival was given by telephone on the 16th is not proved. The schooner was bound by contract to be, not merely in the harbor of Richmond, but at the usual place of unloading there. In the present instance she was bound to be in the dock at Richmond; that being the usual place of unloading. 1 Pars. Shipp. & Adm. 313, note 1, and Abb. Shipp. Eng. (Ed. 1881) p. 243, note o, and page 244, notes a–c. If she was prevented, after getting into the dock, from securing a fit place for discharging her cargo, by any cause over which she had no control, then the lay days occasioned by the crowded condition of the dock would have been chargeable to the consignee. The consignee, not the ship, is answerable for delay from the crowded condition of the harbor. But there does not seem to have been any delay in this case from this cause. The schooner came into the dock about 3 p. m. on the 17th, and the unloading began the next morning at 8 a. m.,—that is to say, within 24 hours after arrival and notice to consignee; for, supposing that notice was given on the morning of the 17th, the consignee was not bound to commence unloading within the 24 hours recognized by the contract. The unloading seems to have been delayed a day and a fraction of a day beyond the period provided for in the contract. The weight of evidence is mostly in favor of the proposition that this delay was not caused by an insufficiency of carts provided by the consignee to receive the coal, but was caused by the coal being delivered from one only of the two hatches of the schooner, and not from both hatches. This was the fault of the schooner, and not of the consignee. I do not think the schooner is entitled to recover demurrage in this case, and the libel must be dismissed, with costs.